PRICE et al., Appellants, v. STIPEK, Respondent.

(No. 2,577.)

(Submitted October 5, 1909. Decided October 11, 1909.)

[104 Pac. 195.]

*Sales—Contracts—Construction—Subject Matter — Reasonable Certainty—When Unenforceable.*

Contracts—Subject Matter—How to be Expressed.
1. In order to constitute a valid contract, the subject matter of the agreement must be expressed by the parties in such terms that it can be ascertained with a reasonable degree of certainty what their intentions were.

Same—Sales—When Agreement Unenforceable.
2. *Held,* under section 4999, Revised Codes, that where defendant requested plaintiff firm, at the solicitation of one of its traveling salesmen, on one of its printed order blanks covering many pages and containing a large variety of all kinds of jewelry of different quality and price, to ship to him "the goods listed in this order upon the terms named therein," and it could not be determined therefrom how many articles of any particular kind or class had been ordered or what prices were to be paid, the memorandum of sale was so indefinite and uncertain in its terms as to make it unenforceable at law.

(426)

*Appeal from District Court, Dawson County; C. H. Loud, Judge.*

ACTION by Milbert F. Price and another, copartners doing business as the Puritan Manufacturing Company, against J. J. Stipek. From a judgment for defendant, on demurrer to the complaint, plaintiffs appeal. Affirmed.

Cause submitted on briefs of counsel.

*Mr. Donald Campbell,* for Appellants.

Section 5017 of the Revised Codes reads as follows: "The following contracts are invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent," etc. What would be a note or memorandum of a contract? The statute offers no definition. Clearly it is something less in its terms than a formal, written contract or agreement; it is an alternative of a lesser nature. Webster says a note is "a minute, a memorandum, or a short writing to assist the memory." A memorandum is defined to be a note to help the memory. (*Barber* v. *Bennett,* 58 Vt. 476, 56 Am. Rep. 565; *Hay* v. *Peterson,* 6 Wyo. 419, 45 Pac. 1073, 34 L. R. A. 581; *Joost* v. *Sullivan,* 111 Cal. 286, 43 Pac. 896.) We take it, then, that the note or memorandum required is a mere skeleton agreement setting up the name of the party selling, the name of the purchaser, the selling price, a description of the articles sold, the whole signed by the party to be charged. No one of these several elements is questioned, save the description. It is only necessary that the subject matter of a contract falling within the operation of the statute of frauds be described in such memorandum in such manner as to make it capable of certain identification, and if the description therein set forth points to specific property, oral evidence is admissible to identify that property. The maxim of *Certum est quod certum reddi potest,* is applicable. (20 Cyc. 270; *Burgess etc.* v. *Bloomfield,* 180 Mass. 283, 62 N. E. 367; *American etc. Mfg. Co.* v. *Midland Steel*

*Co.,* 101 Fed. 200; *Darnell* v. *Lafferty,* 113 Mo. App. 282, 88 S.
W. 784; *Borum* v. *Swift,* 125 Ga. 198, 53 S. E. 608.)

· *Mr. C. C. Hurley,* for Respondent.

In order for a memorandum to be sufficient to comply with
the statute of frauds, it must contain essential terms of the con-
tract with such a degree of certainty, that it may be understood
without recourse to parol evidence to show the intention of the
parties.    (Browne's Statute of Frauds, 4th ed., sec. 371.)    It
must be shown who are the contracting parties; it must intelli-
gently identify the subject matter involved, express the con-
sideration, be signed by the party to be charged and disclose the
terms and conditions of the agreement.    (*Catterlin* v. *Bush,* 39
Or. 496, 59 Pac. 706, 65 Pac. 1065; *Elliot* v. *Barrett,* 144 Mass.
256, 10 N. E. 820; *Williams* v. *Morris,* 95 U. S. 444, 24 L. Ed.
360.)    The memorandum thereof must state the contract with
such certainty that its essentials can be known from the memo-
randum itself, or by reference contained in it to some other writ-
ing, without recourse to parol proof to supply them.    (20 Cyc.
258; *Fry* v. *Platt,* 32 Kan. 62, 3 Pac. 781; *Salomon* v. *McRae,*
9 Colo. App. 23, 47 Pac. 409; *Abba* v. *Smyth,* 21 Utah, 109, 59
Pac. 756; *Ellis* v. *Denver, L. & G. R. R. Co.,* 7 Colo. App. 350,
43 Pac. 457; *Broadway Hospital & Sanitarium* v. *Decker,* 47
Wash. 586, 92 Pac. 445.)    The memorandum in the case at bar
is not such a one as would be prepared in an honest business
transaction, showing the sale of merchandise, but it is rather such
a memorandum as would be prepared by those who are engaged
in a dishonest and fraudulent business.    (*Puritan Mfg. Co.* v.
*Westermire,* 47 Or. 557, 84 Pac. 797; *Johnson Co. Savings Bank*
v. *Rapp,* 47 Wash. 30, 91 Pac. 382.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

The complaint in this action alleges: "That on July 17, 1905,
at defendant's place of business at said city of Glendive, plain-

tiff's traveling agent solicited and defendant gave his order, written upon plaintiffs' regular form, for certain articles of jewelry of the value of three hundred eighty ($380) dollars, * * * and then and there made and executed, subject to plaintiff's approval and acceptance, a certain memorandum of sale of said articles of jewelry, * * * a copy of which memorandum of sale is hereto attached and annexed and marked 'Exhibit A,' and is hereof made a part.'' It is then alleged that this memorandum was received by the plaintiffs and approved by them; that they delivered the goods ''in said memorandum of sale set forth'' to a common carrier, consigned to the defendant at Glendive; and that they have fully performed all the terms of the memorandum by them to be performed, but that defendant has neglected and refused to pay for the goods or any of them. The prayer is for a judgment for $380 and legal interest thereon from July 27, 1905. Attached to this complaint is the memorandum marked ''Exhibit A.'' The defendant interposed a general and special demurrer, which was sustained by the trial court, and plaintiffs, having declined to plead further, suffered judgment to be rendered and entered against them, from which judgment they have prosecuted this appeal.

In the judgment it is recited that in sustaining the demurrer the trial court held that the complaint does not state facts sufficient to constitute a cause of action. Whether it does or does not is to be determined by reference to the legal effect, if any, of the so-called memorandum. Counsel in their briefs have treated the matter as though the complaint alleges that an oral contract for the sale of goods amounting to more than $200 was made, and that ''Exhibit A'' was intended as a note or memorandum of such contract, and the argument is then directed to the question: Is this ''Exhibit A'' a sufficient note or memorandum to take the case out of the operations of the statute of frauds? If that question was before us, we would probably reach the same conclusion which we reach now; but that question is not before us.

The allegation of the complaint is that the defendant gave his order for the goods by virtue of his having signed this ''Exhibit A''; the complaint is not susceptible of any other construction. And this brings us to a consideration of the question: Is this ''Exhibit A'' such an instrument that upon approval by plaintiffs it evidences a contract which can be enforced at law? The exhibit is a unique document. It covers five and one-half pages of the transcript, and to set it forth at length would extend this opinion unnecessarily. Much of it is devoted to extravagant advertising of the goods mentioned in it. For the purposes of this appeal, it will be sufficient to copy portions of one paragraph and the concluding portion of the memorandum, as follows: ''*Individuality.* For the purpose of giving our goods an individuality not enjoyed by other manufacturers, and to *so far as possible exclude the general mixing of the goods of* various factories, which, to a certain extent, precludes the possibility of building up a reputation among the customers, we place the following factory line of rolled gold plate, gold front, gold filled, sterling silver and oxidized finished articles in assorted styles and patterns, on our most liberal and beneficial conditions. Belt buckles or pins from 15c to $2 each; charms and lockets from 15c to $2.50 each; pin sets (three in set) from 15c to $1.25 per set; dress buttons sets (three in set) 16c to $1 per set; single studs 50c each.'' This paragraph then continues with an enumeration of a large number of articles at prices ranging from 8 cents to $2.75 each, concluding as follows: ''Hat pins from 10c to 50c each; bracelets from 85c to $2.25 each. Delivered f. o. b. transportation companies and amounting to $380.00, which can be paid one-fourth in 2 months, one-one-fourth in 4 months, one-fourth in 6 months and one-fourth in 8 months, without interest, if acceptances are given within 10 days from date of invoice; otherwise, terms are net cash 15 days or 6 per cent. discount cash 10 days.'' The last paragraph of the exhibit reads as follows:

"P. O. Glendive, State Mont.   County Dawson.   Date July 17,
1905.

"Puritan Mfg. Co., Factory:

"Please ship at your earliest convenience the goods listed in
this order upon the terms named therein and no others, all of
which I fully understand and approve.   Express Office Glendive, Mt.

"J. J. STIPEK, Owner of Store."

It is an elementary rule of the law that, to constitute a con-
tract, the subject matter of the agreement must be expressed
by the parties in such terms that it can be ascertained with
a reasonable degree of certainty.   (7 Am. & Eng. Ency. of Law,
2d ed., 116.)   In *Thomson* v. *Gortner,* 73 Md. 474, 21 Atl. 371,
the court said: "The law is too well settled to admit of doubt
that, in order to constitute a valid verbal or written agreement,
the parties must express themselves in such terms that it can
be ascertained to a reasonable degree of certainty what they
mean.   And, if an agreement be so vague and indefinite that it
is not possible to collect from it the full intention of the par-
ties, it is void; for neither the court nor the jury can make an
agreement for the parties.   Such a contract can neither be en-
forced in equity nor sued upon at law.   It is hardly necessary
to cite any of the numerous authorities that sustain this plain
legal proposition."

Doubtless this "Exhibit A," when signed by the defendant,
was intended to be an offer which upon acceptance by the plain-
tiffs would constitute a contract; and such result would have fol-
lowed if the defendant had indicated what it was he proposed
to purchase.   Upon the subject of offer and acceptance Page,
in his work on Contracts, says: "The offer must not merely be
complete in terms, but the terms must be sufficiently definite
to enable the court to determine ultimately whether the con-
tract has been performed or not.   If no breach of the contract
could be assigned which could be measured by any test of dam-
ages from the contract, it has been said to be too indefinite to
be enforceable."   (1 Page on Contracts, sec. 28.)   And Parsons

on Contracts, speaking of agreements for the sale of personal property, announces the same rule in the following language: "The price to be paid must be certain, or so referred to a definite standard that it may be made certain. * * * And the thing sold must be specific, and capable of certain identification." (1 Parsons on Contracts, 9th ed., *p. 524.)

With these elementary principles before us, we search this instrument in vain for an answer to any of the following inquiries: How many articles of any particular kind or class are ordered? What is the particular quality of the articles intended to be purchased, and what prices are to be paid for the several articles? Did the defendant intend to order some articles of every description listed by plaintiffs in this "Exhibit A," or did he intend to order only a portion of them? Did he intend to order belt buckles worth fifteen cents each, or belt buckles worth $2 each? This exhibit does not itself answer any of these inquiries, and neither does it refer to any other source from which the information can be obtained. The instrument is clearly of that character which in section 4999, Revised Codes, is declared to be void in the following language: "Where a contract has but a single object, and such object is * * * so vaguely expressed as to be wholly unascertainable, the entire contract is void."

Because this instrument is so indefinite and uncertain in its terms that the intention of the parties cannot be ascertained, we hold that it is not a contract enforceable at law, and that the complaint, based upon the alleged breach of it, does not state facts sufficient to constitute a cause of action.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.